```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 6, 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
CRYSTAL CAROL BEAM,                                                 :
                                                                    :
                                  Plaintiff,                        :
                                                                    :         14-cv-9889 (KBF)
                     -v-                                            :
                                                                    :         OPINION & ORDER
CAROLYN COLVIN, Acting Commissioner of                              :
Social Security,                                                    :
                                                                    :
                                  Defendant.                        :
                                                                    :
------------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

     Plaintiff Crystal Carol Beam ("plaintiff" or "Beam") seeks review of the decision by defendant Commissioner of Social Security (the "Commissioner") finding that she was not disabled and not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act").

     Plaintiff filed applications for DIB and SSI benefits on January 5, 2012, alleging disability as of September 30, 2011. (Tr. 9.) The Commissioner denied plaintiff's claims on June 6, 2012. (Tr. 53-58.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and appeared pro se before ALJ Katherine Edgell on April 9, 2013. (Tr. 27-50.) On June 25, 2013, the ALJ found that plaintiff was not disabled. (Tr. 6-22.) This decision became the final decision of the Commissioner on October 22, 2014, when the Appeals Council denied plaintiff's request for review. (Tr. 1-3.)

On December 15, 2014, plaintiff filed this action seeking judicial review of the ALJ's decision. (ECF No. 1.) Before the Court are the parties' cross-motions for judgment on the pleadings. (ECF Nos. 10, 27.) For the reasons set forth below, plaintiff's motion is GRANTED, defendant's motion is DENIED, and this action is remanded to the Commissioner for further proceedings.

I.   BACKGROUND

The Court sets forth only those facts that are relevant to its review.

Plaintiff, born on March 19, 1983, is an individual with limited education and past relevant work as a packer and cashier. (Tr. 15.) Plaintiff has alleged a disability due to, inter alia, a learning impairment, cognitive deficits, anxiety, and pain/weakness. (Tr. 17.)

In evaluating plaintiff's claims for disability benefits, the ALJ applied the five-step framework required by 20 C.F.R. §§ 404.1520 and 416.920. At step one, the ALJ noted that while plaintiff worked briefly after her alleged onset of disability, her work did not rise to the level of substantial gainful activity. (Tr. 11.)

At step two, the ALJ found that plaintiff had four severe impairments—mild mental retardation, obesity, anxiety, and history of asthma. (Tr. 12-13.) The ALJ determined that plaintiff's fibromyalgia, sleep disorder, and Lyme disease were not severe impairments. (Tr. 12.) The ALJ also determined that plaintiff's alleged bilateral carpal tunnel syndrome was not a medical determinable impairment. (Tr. 12-13.)

The ALJ acknowledged that plaintiff had several diagnoses and conditions with regard to her diagnosis for fibromyalgia—but the ALJ stated that "treatment records fail to document examination findings consistent with this condition." (Tr. 12.) The ALJ specifically noted that "no trigger points were reported at follow-up examinations or upon neurological consultative examination performed on April 22, 2013." (Id.) The ALJ also noted that plaintiff remained "quite functional" in her daily activities. (Id.)

The ALJ also found that, while plaintiff was diagnosed with a sleep disorder and a sleep study test was "reflective of mild obstructive sleep apnea," plaintiff had not been prescribed a continuous positive airway pressure ("CPAP") system. (Id.) The ALJ also noted that there was "no indication of ongoing medical treatment, diagnostic testing" or evidence that plaintiff's sleep disorder interfered with her previous ability to work or current ability to engage in activities of daily living. (Id.)

As to plaintiff's Lyme disease, the ALJ noted that plaintiff was assessed with Lyme disease on July 6, 2012, "treated accordingly with antibiotics and advised to return in one week for a follow-up evaluation." (Id.) The ALJ emphasized that "the record did not reflect any additional medical treatment" for Lyme disease. (Id.)

Finally, as to plaintiff's alleged bilateral carpal tunnel syndrome, the ALJ explained that the record was "devoid of any evidence of carpal tunnel syndrome"— and concluded that, as a result, "a medically determinable impairment cannot be established for the purpose of this decision." (Tr. 12-13.)

3

At step three, the ALJ found that plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of any impairment listed in Appendix 1. (Tr. 13-14.) In particular, the ALJ found that plaintiff's asthma attacks were insufficiently frequent to meet or medically equal the criteria of medical listing 3.03. (Tr. 13.) The ALJ also found that plaintiff's mental impairments, "considered singly and in combination," did not meet or medically equal the criteria of listings 12.05, 12.06, and 12.11. (Tr. 13-14.)

The ALJ then determined plaintiff's RFC. (Tr. 14-20.) The ALJ found that plaintiff could perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (Tr. 14.) The ALJ found that plaintiff could lift and/or carry up to ten pounds occasionally and five pounds frequently, could stand and/or walk for a total of two hours in an eight-hour workday, and could sit for a total of six hours in an eight-hour workday. (Id.) The ALJ also found that plaintiff needed to avoid exposure to concentrated respiratory irritants, and was "limited to work comprised of simple, repetitive tasks "as generally associated with unskilled work secondary to cognitive limitations." (Tr. 15-16.)

In assessing plaintiff's RFC, the ALJ evaluated, inter alia, the assessment and opinion of Dr. Chaim Shtock, a consulting physician who examined plaintiff on April 22, 2013. (Tr. 379-91.) After examining plaintiff, Dr. Shtock opined that plaintiff had severe limitations with heavy lifting, squatting, kneeling, and crouching. (Tr. 383.) He also opined that plaintiff had moderate to marked limitations with frequent stair climbing and walking long distances; and had

4

moderate limitations with standing and sitting for long periods and with frequent bending. (Id.) He further opined that plaintiff had marked limitations performing overhead activities using both arms, and moderate limitations using both hands for fine and gross activities. (Id.) Dr. Shtock opined that plaintiff could lift and carry up to ten pounds occasionally, sit for a total of four hours in an eight-hour workday, stand for a total of one hour in an eight-hour workday, and walk for a total of one hour in an eight-hour workday. (Tr. 385-86.) Dr. Shtock also opined that plaintiff could not work at unprotected heights, operate a motor vehicle, be exposed to pulmonary irritants, travel alone, walk at a reasonable pace on rough or uneven surfaces, or use public transportation. (Tr. 389-90.)

In assessing plaintiff's RFC, the ALJ gave "partial probative weight" to Dr. Shtock's assessment "to the extent that it reflects the claimant's limitation to sedentary work." (Tr. 20.) However, the ALJ gave no weight to Dr. Shtock's opinion that plaintiff could not sit for more than four hours in an eight-hour workday. (Id.) The ALJ explained that this opinion "is not given weight, as it is contradicted by the medical evidence of record, multiple physical examinations performed throughout the claimant's course of treatment indicate that she was grossly neurologically intact, absent any motors deficits." (Id.)

The ALJ found at step four that, based on her RFC, plaintiff could no longer perform her past work as a cashier or packer—but concluded at step five that there were a significant number of jobs in the national economy that plaintiff could perform. (Tr. 20-21.)

5

In connection with plaintiff's claims for benefits, the ALJ received records from the Center for Reduced Stress (the "Center"). (Tr. 363-70.) Plaintiff was first seen at the Center for an intake mental status evaluation on July 26, 2012. (Tr. 369.) The diagnoses stemming from that evaluation are only partially legible. (See Tr. 370.) One of the diagnoses is for an anxiety disorder. The record includes examination notes for four follow-up visits to the Center—a visit in October 2012, two visits in November 2012, and a visit in February 2013—but those notes are illegible. (See Tr. 366, 368.) Nonetheless, in assessing plaintiff's mental health and emotional limitations, the ALJ concluded that "[r]ecords fail to document any unusual anxiety or emotional disturbances and notably prescribed medication has proven beneficial." (Tr. 18.)

II.   APPLICABLE LEGAL PRINCIPLES

    A.   Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010) (citation omitted). Therefore, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010)).

B.     The Disability Standard

The Commissioner will find a claimant disabled under the Act if he or she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). The disability must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).

The Commissioner uses a five-step process when making disability determinations. See 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1 ["Appendix 1"]. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ["RFC"] to perform her past work. Finally, if the claimant is unable to perform her past work, the burden

7

> then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (citation and footnote omitted); see also Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998).  The claimant bears the burden of proof in steps one through four, while the Commissioner bears the burden in the final step. Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

### C.   Review of the ALJ's Judgment

The Commissioner and ALJ's decisions are subject to limited judicial review. The Court may only consider whether the ALJ applied the correct legal standard and whether his or her findings of fact are supported by substantial evidence. When these two conditions are met, the Commissioner's decision is final.  See Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) ("We set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." (citation omitted)); 42 U.S.C. § 405(g).

Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).

While the Court must consider the record as a whole in making this determination, it is not for this Court to decide de novo whether the plaintiff is

8

disabled.  See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998); Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997); Veino, 312 F.3d at 586 ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner.").  The Court must uphold the Commissioner's decision upon a finding of substantial evidence, even when contrary evidence exists.  See Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder." (citation omitted)); see also DeChirico, 134 F.3d at 1182-83 (affirming an ALJ decision where substantial evidence supported both sides).

"[T]he treating physician rule generally requires deference to the medical opinion of a claimant's treating physician," although an ALJ need not afford controlling weight to a treating physician's opinion that is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citations omitted).  An ALJ who does not accord controlling weight to the medical opinion of a treating physician must consider various factors, including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; [and] (iv) whether the opinion is from a specialist." Id. (citing 20 C.F.R. § 404.1527(d)(2)).  After considering these factors, the ALJ must

9

"comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33.

The Second Circuit has held that it is improper for an ALJ "to reject a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings." Rosa, 168 F.3d at 81 (citations omitted). In Rosa, the administrative record included an opinion by the plaintiff's treating physician that plaintiff "was incapable of either sitting or standing for more than one to two hours during the course of an eight-hour work day." Id. at 75. The ALJ rejected this opinion—and relied primarily on reports submitted by two consulting physicians whose findings the ALJ found were "consistent" with plaintiff's ability to perform a full range of sedentary work activity. Id. at 76. The Second Circuit held that this was error because the consulting physicians' "reports were consistent with this conclusion . . . only to the extent that they were silent on the issue"—and there was no indication that the consultants intended anything by their silence. Id. at 81. "Under these circumstances, the Commissioner was precluded from relying on the consultants' omissions as the primary evidence supporting its denial of benefits." Id.

    D.    <u>The ALJ's Duty to Develop the Record</u>

Although "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act," "the ALJ generally has an affirmative obligation to develop the administrative record." Burgess, 537 F.3d at 128 (citations and internal quotation marks omitted). SSA regulations require an ALJ to "inquire

fully into the matters at issue and . . . receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters." Id. (quoting 20 C.F.R. § 702.338). "In light of the ALJ's affirmative duty to develop the administrative record, 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'" Id. at 129 (citation omitted); Calzada v. Asture, 753 F. Supp. 2d 250, 277 (S.D.N.Y. 2010) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician." (citing Perez, 77 F.3d at 47)).

When, as here, the claimant proceeds pro se, the ALJ's duty to develop the record is heightened. Moran v. Astrue, 569 F.3d 108, 113 (2d Cir. 2009) (quoting Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990)) (internal quotation marks omitted); see also Cruz, 912 F.2d at 11 ("[W]hen the claimant is unrepresented, the ALJ is under a heightened duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" (citation and internal quotation marks omitted)). "The ALJ must take all reasonable steps to obtain past and current medical evidence and assessments from treating sources identified by a pro se plaintiff, in order to complete the administrative record." Jones v. Apfel, 66 F. Supp. 2d 518, 524 (S.D.N.Y. 1999) (citation omitted). "'Reasonable efforts' in this context entails more than merely requesting reports from the treating physicians. It includes issuing and enforcing subpoenas requiring the production of evidence, as

11

authorized by 42 U.S.C. § 405(d), and advising the plaintiff of the importance of the evidence." Id. (citation omitted). The ALJ must "enter these attempts at evidentiary development into the record." Id. (citation omitted).

III. DISCUSSION

The ALJ did not fulfill her duty to develop the record in this case—and improperly assigned no weight to Dr. Shtock's opinion that plaintiff could not sit for more than four hours in an eight-hour workday.

The records that the ALJ received from the Center for Reduced Stress are largely illegible. Plaintiff's only visit to the Center for which there are partially legible records is the July 26, 2012 intake evaluation; the records for plaintiff's four follow-up visits to the Center between October 2012 and February 2013 are entirely illegible. Nonetheless, the ALJ concluded that "[r]ecords fail to document any unusual anxiety or emotional disturbances and notably prescribed medication has proven beneficial." (Tr. 18.) This was improper. The intake evaluation resulted in a diagnosis for anxiety as well as several other diagnoses (some of which are themselves illegible)—and there is no way of knowing on the current record whether or how the conditions underlying these diagnoses deteriorated or improved between July 2012 and February 2013. The ALJ was obligated to obtain a full and legible medical record from the Center before making any determinations as to plaintiff's mental health or psychiatric conditions—or their effects on plaintiff's ability to carry out daily living or work activities. See Burgess, 537 F.3d at 128 (SSA regulations require an ALJ to "inquire fully into the matters at issue and . . .

12

receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters." (quoting 20 C.F.R. § 702.338)); Cruz, 912 F.2d at 11 ("[W]hen the claimant is unrepresented, the ALJ is under a heightened duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" (citation and internal quotation marks omitted)); Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996) (finding that remand was appropriate where, inter alia, the medical records in the record were "frequently incomplete or illegible" and provided "no coherent overview" of the plaintiff's treatment).  On remand, the ALJ shall obtain a full and legible medical record from the Center for Reduced Stress—and reconsider its decision in light of that record.

The ALJ also improperly assigned no weight to Dr. Shtock's opinion that plaintiff could not sit for more than four hours in an eight-hour workday.  The ALJ rejected Dr. Shtock's opinion on the ground that "multiple physical examinations performed throughout the claimant's course of treatment indicate that she was grossly neurologically intact, absent any motors deficits." (Tr. 20.)  However, a finding that plaintiff is "neurologically intact" or lacks "motors deficits" is not equivalent to—or necessarily encompass—a finding that plaintiff is capable of sitting a certain number of hours each day.  The other evidence in the record is simply silent as to that issue.[1]  The ALJ cannot reject Dr. Shtock's opinion that

---

[1] In her brief on this motion, the Commissioner cites the following excerpt from plaintiff's testimony before the ALJ:

> Q: What about sitting, is that better?
> A: I can sit, but that bothers me too.

13

plaintiff could not sit for more than four hours per day and rely on other doctors' silence as support for a finding that plaintiff is capable of sitting for six.  See Rosa, 168 F.3d at 81 (It is improper for an ALJ "to reject a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings" (citations omitted)); Sobolewski v. Apfel, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("[T]he burden of proof is on the Commissioner to offer positive evidence that plaintiff can perform sedentary work, and the burden is not carried merely by pointing to evidence that is consistent with his otherwise unsupported assertion." (citation omitted)).[2]  On remand, the ALJ shall reassess plaintiff's ability to perform sedentary work (after further developing the record as appropriate).

## IV.   CONCLUSION

Accordingly, plaintiff's motion is GRANTED, defendant's motion is DENIED, and this case is remanded to the Commissioner for further proceedings.  On remand, the ALJ shall further develop the administrative record, including by obtaining a full and legible set of records from the Center for Reduced Stress; reconsider her assessment of the evidence in the record (particularly the opinions of Dr. Shtock); and issue a new decision consistent with this Opinion & Order.  The

---

(Tr. 48.)  The Commissioner summarizes this testimony as "plaintiff reported no significant difficulty with sitting."  (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings and in Support of Her Cross-Motion for Judgment on the Pleadings at 23, ECF No. 28.)  Putting aside the accuracy of this summary, the issue is not whether or not plaintiff is capable of sitting; it is <u>for how many hours per day</u> she is capable of sitting.  Her testimony is silent as to this issue.

[2] The Court is cognizant of the fact that the medical opinion that the ALJ rejected in Rosa was by a treating physician, whereas Dr. Shtock is a consulting physician.  Nonetheless, Rosa's holding carries over to this case; the point is that the ALJ cannot rely on mere omissions in the record to support a finding that plaintiff is capable of sedentary work.

ALJ may reconsider any other aspect of her decision as appropriate on a complete record. In particular, the ALJ shall consider whether further development of the record as to plaintiff's fibromyalgia or carpal tunnel syndrome is necessary or appropriate.

The Clerk of Court is directed to terminate the motions at ECF Nos. 10 and 27, to terminate this action, and to remand this action to the Commissioner for further proceedings consistent with this Opinion & Order.

SO ORDERED.

Dated:    New York, New York
          August 6, 2015

                                    _____
                                        KATHERINE B. FORREST
                                        United States District Judge